**Not For Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 03-2230

UNIVAR, USA, INC.,

Plaintiff, Appellee,

v.

TEAMSTERS UNION LOCAL 251,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. Mary M. Lisi, U.S. District Judge]

---

Before

Boudin, Chief Judge,

Lynch and Howard, Circuit Judges.

---

Marc B. Gursky, with whom Thomas R. Landry and Gursky Law
Associates were on brief, for appellant.
Lincoln D. Almond, with whom Mark A. Pogue, John D. Doran and
Edwards & Angell, LLP were on brief, for appellee.

---

May 25, 2004

---

**Per Curiam**. On July 30, 2003, Univar USA, Inc., a chemical distribution and production company, secured an injunction enjoining Teamsters Union Local 251 from committing a number of unlawful acts on its then two-week-old picket line outside Univar's facilities. The injunction, issued pursuant to the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., prohibits Union members and/or picketers from trespassing on Univar's property; threatening or assaulting Univar's employees, suppliers, independent contractors, or others seeking to enter or exit Univar's facilities; standing within 20 feet of any vehicle entering or leaving the facilities; blocking any vehicle entering or leaving the facilities; and placing in the roadway or on Univar's property any object with the intention of damaging Univar's vehicles or the vehicles of Univar's suppliers, employees, or business invitees. The injunction also requires picketers to move in single file while on the picket line.

The Union brings this appeal to contest the issuance of the injunction. The Union does not dispute that behavior of the sort enjoined occurred on its picket line between July 16, 2003 (the day the Union began its strike) and July 30, 2003 (the day the injunction issued). Rather, the Union notes that "the nation's labor policy counsels that district courts be chary about intruding into the [labor dispute] field" because of "the long, sometimes tragic[] history of premature judicial intervention in labor-

management controversies." <u>Independent Oil & Chem. Workers</u> v. <u>Proctor & Gamble</u>, 864 F.2d 927, 929 (1st Cir. 1988). Building from this presumption against intervention and invoking the statutory admonition that "no injunction or temporary restraining order shall be issued on account of any threat or unlawful act excepting against the person or persons, association, or organization making the threat or committing the unlawful act or actually authorizing or ratifying the same after actual knowledge thereof," 29 U.S.C. § 107(a), the Union contends that "[t]he record is completely bereft of any evidence which supports the District Court's conclusion that the Union actually ratified and/or authorized unlawful acts after knowledge thereof." Alternatively, the Union asserts that "the record is similarly devoid of any evidence demonstrating that illegal acts were likely to continue unless restrained." Univar's response contains a challenge to the Union's interpretation of § 107(a) and its application to this case, but we leave the legal issues to another day because the appeal is susceptible of resolution on narrower grounds.

The district court supportably found that, on July 17, 2003, the Union's President and Business Agent, Joseph Bairos, had told picketers to picket back and forth in an orderly fashion (after putting an end to the picketers' practice of using mirrors to reflect sunlight into the faces of Univar drivers and employees). Nevertheless, on July 18, 2003, Bairos arrived at the

strike scene and saw that picketers were not following his instructions. Instead, they had blocked a train from making a delivery to Univar. The district court described (in an oral ruling) what happened next:

> Mr. Bairos did not instruct the picketers to disperse from in front of the train and move back and forth in an orderly fashion. Rather, he did not tell them to disperse until after he had personally spoken to the train engineer and secured an assurance from that engineer that the delivery would not be made to the Plaintiff that day.

The court also found that on the picket line, "there is a designated contact person, either the union steward or the most senior employee, with whom [Bairos] and/or [another business agent with responsibility for the Univar strike and the picketing] may communicate by cell phone."

The court then relied heavily on these two findings in rejecting the Union's no-ratification/authorization argument:

> On July 17th, Mr. Bairos instructed that the picketers be orderly and that they keep moving. On the very next day, however, when he was on the scene himself and saw that the picketers were not acting in an orderly fashion or moving but rather standing in front of the train engine, rather than reiterate his previous instruction and to order his members to disperse, he personally secured the assurances from the engineer not to make the delivery, engaged in some conversation with the engineer, and then once he secured assurance from the engineer, the membership dispersed.
>
> <u>This activity on the part of Mr. Bairos, as president of the union, in my mind</u>

> is the equivalent of [a] wink and nod.  That
> is, it is as though he's saying to the members
> that it's fine to congregate as they did and
> to remain in place, in other words, to do as I
> do rather than to do what I told you to do
> yesterday . . . .
>
> Moreover, as Mr. Bairos has testified,
> even when leadership may not be physically
> present on the line, there is a contact person
> so designated with whom the leadership can
> talk by cell phone and receive reports of what
> is going on.
>
> Taking all of these [and other] facts
> into account, this Court finds that the
> Defendant union in this case had actual
> knowledge of these unlawful acts and by
> actions of the leadership itself authorized
> and/or ratified after the fact those unlawful
> acts.

(emphasis supplied).

In presenting its argument that the record is "bereft" of evidence that Union officers authorized and/or ratified the illegal conduct giving rise to the injunction, the Union all but ignores the district court's determinations that such authorization or ratification occurred because, inter alia, (1) Bairos gave "a wink and a nod" to the unruly picketers, and (2) the Union at all relevant times had an agent on the picket line and thus was on notice of the unlawful behavior underlying the injunction.[1]  Thus, assuming arguendo that authorization or ratification were required, the district court expressly made such a finding with its finding

_____

[1]Indeed, in quoting the allegedly "relevant" portion of the court's ruling in its Statement of Facts, the Union omits the underlined language quoted above and replaces it with an ellipsis.

of "a wink and a nod."  The Union presents no argument that the finding was not supported by the evidence and so has waived the argument.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).  And in any event, our reading of the record does not persuade us that the court reversibly erred in its factual findings or in tailoring its injunction to those findings.

We also reject the Union's argument that the district court erred in determining that illegal acts were likely to continue unless restrained.  There was uncontradicted evidence that, well after the Union was on notice that Univar was seeking an injunction, persons attempting to drive into and out of Univar's facilities were subjected to assaults, threats, having their vehicles blocked, and dangerous games of "chicken" by persons (presumably Union members or sympathizers) driving other vehicles. The record as a whole supports the court's conclusions that an injunction was necessary to preserve the peace in a situation with escalating tensions and lawlessness, and that an injunction against the Union was an appropriate mechanism for defusing the situation.

Affirmed.